UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
:
KENNETH PLATO, :
:
                Petitioner, :   **MEMORANDUM**
:    **DECISION AND ORDER**
   -against- :
:    06 Civ. 6559 (BMC)
THOMAS POOLE, :
:
                Respondent. :
:
----------------------------------------------------------- X

**COGAN, District Judge.**

Petitioner, in his habeas corpus proceeding under 28 U.S.C. § 2254, raises three issues: (1) his due process rights were violated by the trial court receiving expert testimony from the chief prosecutor in charge of narcotics prosecutions; (2) excessive sentence, in light of the disparity between the plea offer he rejected and the sentence imposed after conviction; and (3) violation of his right to effective assistance of counsel when the trial court denied his motion to appoint substitute counsel. His conviction was for drug and gun crimes, for which he was charged when the police, executing a no-knock warrant, observed him and an associate throwing drugs, guns, ammunition, and stolen police equipment from a window in the apartment that they were trying to enter. Additional facts are set forth below as relevant to each point that he has raised.

## I. Expert Testimony

The prosecutor had planned to call a police detective as an expert witness to testify that the quantity of drugs and other items that were seized on arrest was consistent with a scheme to distribute drugs, not personal use of the drugs. There is nothing controversial about a police officer so testifying, if properly qualified. See generally United States v. Barrow, 400 F.3d 109 (2d Cir. 2005). However, when the police detective became unavailable for some reason not disclosed on the record, the prosecution called instead Harvey Caspar, who was the Executive Assistant District Attorney in charge of narcotics prosecutions. After the trial court accepted his qualifications as an expert, Caspar testified as to the retail value of the drugs seized and that the nature of the materials seized was "consistent with a drug seller" rather than a drug user. He also acknowledged on direct examination that part of his role as Executive Assistant is to approve all narcotics prosecutions, thus implying that he had approved the instant prosecution, and on cross-examination he expressly testified that he did so.

In the Appellate Division and here, the District Attorney characterized petitioner's argument as attacking the trial court's decision to certify Caspar as an expert, focusing on his qualifications, and thus portraying the issue as whether expert certification was within the broad discretion of the trial court as to evidentiary rulings. That was not the only or even the primary issue raised at trial or on appeal, although the District Attorney's characterization can be excused because the objections at trial and in the Appellate Division briefing were somewhat vague. Although defense counsel at trial, surprised by the fact that he was facing a prosecutor/expert witness instead of a police officer/expert witness, did question Caspar's qualifications, he also stated that the issue was "possible bias," and questioned Caspar's independence in the case,

noting, "[h]e prosecutes these cases. He wants convictions. I'm sure he's discussed with [the prosecuting district attorney] about how to prosecute this case as an independent expert."

Thus, although barely adequately stated, the objection that defense counsel was trying to get out was that prosecutors involved in the case had the dual role of both advocating their view of the evidence and giving testimony that was itself evidence. The question is whether that prosecutorial conduct was constitutionally infirm. Rather than lending itself to analysis under the cases dealing with erroneous admission of evidence by the trial court, as the District Attorney has asserted in the Appellate Division and here, this claim is closer to one alleging misconduct by the prosecutor. This is particularly true since petitioner's accusation, both here and in the Appellate Division (although not articulated at trial), is that the prosecution violated New York Code of Professional Responsibility Disciplinary Rule 5-102 (DR 5-102) by acting both as advocate and witness. (Respondent argued in the Appellate Division and argues here that the claim was unpreserved, but the Appellate Division disposed of it as "without merit" and thus there is no procedural bar.)

The problem with petitioner's argument is that although the decision to call Caspar may appear a bit unsavory, it does not violate any restriction on prosecutorial conduct, and even if it did, any such violation would have no constitutional implications. The testimony of Caspar did not violate the rule against knowingly presenting false testimony, see generally Shih Wei Su v. Filion, 335 F.3d 119 (2d Cir. 2003), since there was nothing false about the testimony. The testimony also did not violate New York's unsworn witness rule, see People v. Paperno, 54 N.Y.2d 294, 445 N.Y.S.2d 119 (1981), because Caspar acted only as a witness at trial, not an advocate, and was indeed sworn and subjected to cross-examination when he testified.

New York's unsworn witness rule is an expansion of the prohibition in DR 5-102. The unsworn witness rule essentially seeks to prevent a trial lawyer from achieving through unsworn comments and statements that which he could not provide under this rule through sworn testimony. See Paperno, 54 N.Y.2d 294, 445 N.Y.S.2d 119. However, there was no violation of DR 5-102 here for two reasons.

First, the general prohibition in DR 5-102(A) is directed only at the individual lawyer who acts "an as advocate of issues of fact before any tribunal." "[B]efore any tribunal" means the trial lawyer, not an office lawyer like Caspar, even if he had approved bringing the case (which he did). This is made clear by contrasting DR 5-102(A) with DR 5-102(B); only the latter contains an "entity" restriction:

> Neither a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer *or another lawyer in the lawyer's firm* may be called as a witness on a significant issue other than on behalf of the client, *and it is apparent that the testimony would or might be prejudicial to the client*.

DR 5-102(B) (emphasis added). There is no similar reference to a "firm" disqualification under section (A). Assuming *arguendo* that the District Attorney's office constitutes a "firm" for purposes of section (B), there can be no contention that Caspar's testimony was prejudicial to the prosecution's case, so it does not apply.

Thus, only section (A) applies, and that section covers only the prosecutor, not Caspar, who was no more an "advocate" than any other expert or fact witness. See Ramey v. District 141, Int'l Ass'n of Machinists and Aerospace Workers, 378 F.3d 269, 282-83 (2d Cir. 2004) (the concerns reflected in the advocate-witness prohibition "are absent or, at least, greatly reduced, when [as here] the lawyer-witness does not act as trial counsel") (quoting Culebras Enter. Corp. v. Rivera-Rios, 846 F.2d 94, 100 (1st Cir. 1988) ("even if he performs behind-the-scenes work

for the client in the same case," a lawyer who is not trial counsel is not prohibited from testifying)). The mere fact that Caspar had an alleged bias does not distinguish him from other interested witnesses.

Second, even if the rule applied to Caspar, his testimony would fall under exceptions (1) and (2), which allow testimony by an advocate if it relates "solely to an uncontested issue" or to "a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." There was in fact no evidence offered to oppose Caspar's opinion. (It would have been difficult, to say the least, to offer credible testimony that a .45 caliber handgun, a .9 mm Ruger, a .22 caliber pistol – all loaded and with additional boxes of ammunition – a total of over 200 bags of crack cocaine and marijuana, a bullet proof vest, and a police radio were consistent with use of drugs and not sale.) The fact that Caspar's testimony was necessary to satisfy some elements of the crime no more made the issue "contested" or less "a matter of formality" than that where an attorney prosecuting a copyright case testifies that the copyright had been validly registered, which is a necessary element of a copyright claim. See Nadel & Sons Toy Corp. v. William Shaland Corp., 657 F. Supp. 133 (S.D.N.Y. 1987).

Of course, even if a prosecutor violates the Code of Professional Responsibility, not every violation is co-extensive with a defendant's due process rights. See Stewart v. Duckworth, 93 F.3d 262 (7th Cir. 1996) (denying habeas corpus relief even though prosecutor violated Code of Professional Responsibility). A habeas corpus petitioner has to show both prejudice, and that the prosecutor's alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2564, 2471 (1986) (finding no due process violation even though prosecutor's conduct "deserves the condemnation it has received from every court to review it") (quotation omitted). Petitioner

comes nowhere near to meeting this standard. That the articles seized were consistent with sale of drugs rather than mere personal use is almost self-evident; the fact that Caspar confirmed this instead of a police officer presents no constitutional issue.

Since petitioner cannot show any due process violation, it follows *a fortiori* that he cannot show that the Appellate Division's decision was contrary to or an unreasonable application of Supreme Court authority. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

## II. Excessive Sentence

Petitioner was offered a plea agreement with a total sentence of five to nine years. He declined it. After conviction, he was sentenced to twenty-five to thirty-five years. In state court, he challenged this solely as a matter of discretion, referring to no provision of the U.S. Constitution, no federal case law, and no state case law applying federal constitutional standards. Therefore, to the extent he is attempting to raise a federal constitutional claim now, it is unexhausted, see Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186 (2d Cir. 1982) (en banc), but since it can no longer be raised in state court, it is deemed exhausted but procedurally barred. See St. Helen v. Senkowski, 374 F.3d 181 (2d Cir. 2004). Petitioner has alleged neither cause nor prejudice for failing to raise the claim in state court.

Even if he had properly raised it, it is well settled that a sentence within a state statutory range does not present a constitutional issue simply because a defendant was presented with a better offer before trial. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (holding that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law"). Petitioner was sentenced as a second violent felony offender to concurrent sentences of fifteen years' imprisonment on his two second-degree weapons

convictions, ten to twenty years imprisonment for his controlled substances conviction to run consecutively with his second degree weapons convictions, and one year each for his stolen-property, drug-paraphernalia, marijuana, ammunition, and fourth degree weapons convictions, to run concurrently with each other and the other sentences. This was within the statutory range, see N.Y. Penal L. §§ 70.04(3)(b); 70.06(3)(b); and 70.15(1), so no federal constitutional issue has been raised.

## III. Denial of Motion to Substitute Counsel

After several adjournments, literally on the eve of trial, petitioner filed a motion *pro se* objecting to his assigned counsel and requesting new assigned counsel. The essence of the motion was that assigned counsel had neglected the case, not meeting with him or advising him of decisions and giving him copies of motions and orders. The trial court reviewed the motion and inquired of assigned counsel, who said he had not neglected the case and specified what he done. The trial court thereupon summarily denied the motion.

The Sixth Amendment guarantee of the appointment of competent counsel under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 (1963), does not mean that a defendant is entitled to a "meaningful attorney-client relationship." Morris v. Slappy, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 1617 (1983); accord U.S. v. Schmidt, 105 F.3d 82 (2d Cir. 1997) (trial court may assign an attorney not of defendant's choosing so long as counsel affords competent representation). If a defendant asserts a "seemingly substantial complaint" in support of a motion to substitute counsel, a trial court should look into the reasons for the complaint. McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (quotation omitted). However, even if the trial court does not look into the reasons behind the complaint, a petitioner fails to state a claim for habeas corpus relief unless he can show that he sustained actual harm as a result of the omission. Id.

In a federal prosecution, courts within the Second Circuit are required to consider the timeliness of the defendant's motion; adequacy of the trial court's inquiry into the defendant's complaint about counsel; and whether the attorney/client conflict was "so great that it had resulted in total lack of communication preventing an adequate defense." U.S. v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001) (quotation omitted). Although the trial court's ruling may not have been a model of compliance with this standard (the court refused to allow defendant to address the issue orally, although it had said it would allow him to do so, and stated no reasons for its ruling), it did review the affidavit and brief that petitioner submitted *pro se* (in which he appears to have had substantial assistance from someone with legal training), and it questioned petitioner's trial attorney, whose answers could validly support a finding of effective assistance under these factors.

Moreover, the Second Circuit standard is not applicable to state habeas corpus. "No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007). The standard, instead, is under 28 U.S.C. § 2254(d), which requires a Court, in order to issue the writ, to find that the Appellate Division's decision rejecting petitioner's claim was contrary to or an unreasonable application of Supreme Court authority or involved "an unreasonable determination of the facts."

Petitioner cannot meet this standard. The Appellate Division's holding that the motion to appoint substitute counsel was a "dilatory tactic," People v. Plato, 22 A.D.3d 507, 801 N.Y.S.2d 536 (2d Dep't 2005), and thus not an abuse of the trial court's discretion, is not an unreasonable application of any Supreme Court authority. Moreover, what was missing from petitioner's motion to the trial court, and his petition here, is any indication that he was prejudiced by what

he claims was a lack of sufficient attention by his counsel prior to trial. He identified no defense that should have been raised or developed further that was not. Prejudice is an essential element of any claim for ineffective assistance, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), and petitioner has not demonstrated sufficient prejudice to have mandated replacement counsel on the eve of trial.

In this regard, pursuant to Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005), this Court has previously denied petitioner's motion for a stay pending exhaustion of an additional claim for ineffective assistance of counsel, which is currently the subject of a N.Y. CPL § 440.30 motion that he has pending in state court. The essence of that claim is that since none of the witnesses against petitioner at trial testified that he was wearing gloves when he threw the contraband from the window, his trial counsel should have moved for the appointment of a DNA expert to test the ammunition and guns to show, hopefully, that petitioner's DNA was not on the contraband. Although this Court will not opine on an issue currently pending before the state courts, it suffices to note here that petitioner never raised this theory in his motion to appoint substitute counsel, and thus the trial court had no opportunity to opine on it.

## CONCLUSION

The petition is dismissed. The Clerk is directed to enter judgment in favor of respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
_____
U.S.D.J.

Dated: Brooklyn, New York
January 24, 2008